## MEYER *v.* ROTHE.

PRACTICE; DEPOSITIONS, IRREGULARITIES IN; EVIDENCE; INTERPRETERS; PATENTS.

1. Objections to depositions for technical defects must be taken before the cause goes to hearing; and this rule applies as well to interference proceedings in the Patent Office as to ordinary judicial proceedings.
2. The existence of irregularities in the manner of taking a deposition will not be assumed, but when sought to be taken advantage of must plainly appear in the record.
3. Where the officer before whom a deposition is taken of a witness who is a foreigner and not fully conversant with the English language, takes down the answers of the witness in English after having interpreted the interrogatories to the witness, the deposition will not be rejected because it does not appear that the officer was sworn as an interpreter.
5. In an interference proceeding involving priority of invention of an apparatus for oxidizing hosiery, the decision of the Commissioner of Patents awarding priority to the junior applicant *affirmed.*

Patent Appeals. No. 93. Submitted May 11, 1898. Decided June 7, 1898.

HEARING on an appeal from the decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Julian C. Dowell* for the appellant.

*Messrs. Whitaker & Prevost* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

In an interference proceeding in the Patent Office, wherein the matter of controversy was an improvement in apparatus for oxidizing hosiery, all the tribunals of the Patent Office awarded judgment of priority of invention in favor of the appellee Rothe; and there would seem to be but little ground to question the justice and propriety of the decision

13 Ct. App.—8

were it not that a somewhat novel question has been raised in regard to the admissibility of a certain deposition used in the case, and upon which, it is claimed, the decision depends.

The appellants, Robert Meyer and William C. Foulds, were the first to file their application in the Patent Office, which they did on February 16, 1895. The application of the appellee, Oswald Rothe, was filed on March 28, 1895. Placed in interference and called upon to make their preliminary statements, Rothe filed his statement, in which he claimed to have conceived the invention in issue about May 20, 1894, and to have reduced it to practice about August 23, 1894, while the appellants, Meyer and Foulds, in their statement, claimed to have conceived the invention in 1887, to have made a model of it in 1890, and to have used the invention to some extent since the Fall of 1894.

The burden of proof was upon Rothe as the junior applicant, and he assumed it. Notice that he would proceed to take his testimony was duly served upon the attorney for the appellants; but no attention seems to have been paid to it by the latter. On the day specified no counsel appeared on behalf of the appellants, nor did either of the appellants appear. After some delay to await such appearance, the taking of testimony on behalf of the appellee was proceeded with, and was concluded in two days, and the testimony was duly returned to the Patent Office. The appellants took no testimony, and seem to have made no movement whatever until after the decision of the examiner of interferences in March, 1897, although the testimony for the appellee had been filed in December of 1896, and the case had been pending before the examiner for several months. It appears that they then filed a motion to reopen the judgment, for permission to take testimony, and for the extension of the time for appeal. This motion the examiner denied, and the appellants thereupon appealed to the Commissioner, who affirmed his ruling.

They then appealed from the decision of the examiner of interferences upon the issue of interference to the board of examiners-in-chief, notwithstanding that the time limited for appeal had expired. The board affirmed the decision of the examiner, and upon appeal from the board to the Commissioner of Patents the acting Commissioner affirmed the decision of the board. All awarded priority of invention to the appellee Rothe. Upon further appeal the cause now comes to this court.

The questions raised upon the appeal, and which were likewise raised before the board of examiners-in-chief and before the acting Commissioner of Patents, are substantially two: First, whether the deposition of the appellee was properly taken; and, second, whether the testimony on behalf of the appellee was sufficient to support his claim.

First. With reference to the first of these two questions the facts disclosed by the record are that the appellee Rothe, to whose deposition objection is taken, is a German, and seems not to have been fully conversant with the English language; that the notary public before whom the testimony was adduced, and who acted as the commissioner for taking it, seems also to have been a German or of German origin, and to have been conversant both with the English and the German language, and that he took down the answers of the witness in the English language after having interpreted the interrogatories to him in German. It is argued on behalf of the appellants that the deposition so taken is inadmissible on the ground that the notary was not sworn as an interpreter.

But there are several very plain answers to this argument. In the first place, the objection comes too late. It is undoubtedly the proper practice that for technical defects objection must be taken to depositions before the cause goes to hearing. This is only the dictate of justice, because then the party on whose behalf the deposition is introduced may have an opportunity to remedy the supposed defect, and it

is the rule maintained by all the authorities.    *Shutte* v.
*Thompson,* 15 Wall. 151 ; *Doane* v. *Glenn,* 21 Wall. 33 ; *How-
ard* v. *Stillwell, etc. Co.,* 139 U. S. 199 ; *Bibb* v. *Allen,* 149 U.
S. 481.    In the last-cited case it was said by the Supreme
Court of the United States, through Mr. Justice Jackson :

"If the deposition was in any respect open to irregulari-
ties, the motion to suppress it, under the circumstances,
came too late.    Such motions should be made before the
case is called for trial, so as to afford opportunity to retake
the testimony or correct defects in the taking of the depo-
sition."

And this rule is as salutary and as necessary in interfer-
ence proceedings in the Patent Office as it is in the ordinary
courts of justice.

In the second place, it seems to. be a mere inference or
assumption from the record that the notary was not sworn
as an interpreter.    The deposition itself, and the notary's
certificate thereto, are silent on the subject; and whatever
may be the rule before the hearing, we can not at this stage
of the proceedings assume the existence of irregularities
unless they are plainly shown by the record.

But, in the last place, we are of opinion that there was
no such irregularity in this case as is claimed on behalf of
the appellants.

Testimony *for use in interference* cases in the Patent
Office is almost of necessity adduced by way of deposition.
Section 4905 of the Revised Statutes of the United States
has prescribed that, "the Commissioner of Patents may
establish rules for taking affidavits and depositions required
in cases pending in the Patent Office, and such affidavits
and depositions may be taken before any officer authorized
by law to take depositions to be used in the courts of the
United States, or of the State where the officer resides."

In accordance with this provision of law the rules pro-
mulgated by the Patent Office have provided, among other
things, quite minutely and specifically for the taking of the

depositions to be used before it, and one of those rules, (Rule 154), after providing for notice to opposing parties, prescribes as follows:

"Each witness before testifying shall be duly sworn according to law by the officer before whom his deposition shall be taken. The deposition shall be carefully read over by the witness, or by the officer to him, and shall then be subscribed by the witness in the presence of the officer. The officer shall annex to the deposition his certificate showing, first, the due administration of the oath by the officer to the witness before the commencement of his testimony; second, the name of the person by whom the testimony was written out, and the fact that, if not written· by the officer, it was written in his presence; third, the presence or absence of the adverse party; fourth, the place, day, and hour of commencing and taking the deposition; fifth, the reading by or to each witness of his deposition before he signs the same, and, sixth, the fact that the officer was not connected by blood or marriage with either of the parties, nor interested directly or indirectly, in the matter in controversy. . . ."

Among the officers authorized by the laws of the United States to take depositions to be used in the courts of the United States, and therefore competent under Section 4905 of the Revised Statutes, above cited, and under Rule 154 of the Patent Office, is the notary public. Section 863 of the Revised Statutes says:

"The deposition may be taken before any judge of any court of the United States, or any commissioner of a circuit court, or any clerk of a district or circuit court, or any chancellor, justice, or judge of a supreme or superior court, or mayor or chief magistrate of a city, judge of a county court or court of common pleas of any of the United States, *or any notary public,* not being of counsel or attorney to either of the parties, nor interested in the event of the cause."

And inasmuch as there is no further qualification required of the officer who ·acts than the commission by and under

which he has received his appointment to his office, no special oath or other obligation to perform the duty faithfully is prescribed by the statute or by the rules of the Patent Office. It has resulted as matter of convenience that testimony for use in the Patent Office has very generally, if not invariably, been taken by and before notaries public; and the commissions issued to these officers by the proper authorities of their respective States are sufficient warrant to them, without other preliminary qualification, by special oath or otherwise, to take and return the depositions required for the determination of causes in the Patent Office.

The execution of the statute and of the rule in the case where witnesses are presented who are not conversant with the English language and can not testify in it, presents, of course, a difficulty, but not greater than is encountered in the courts of law. Testimony with us is necessarily required to be in the English language, and the testimony of a witness unacquainted with our language or unable to testify in it must be translated into the English language before it can become testimony competent to be used for the adjudication of our legal controversies. This is accomplished in our courts of common law by the aid of interpreters, who are themselves sworn as witnesses for the purpose. And the rule is not dissimilar in equity or other tribunals in which testimony is required to be adduced by way of deposition. But where the officer who takes the deposition is himself conversant not only with the English language, in which he takes it, but likewise with the language of the witness, an interpreter is unnecessary. Indeed, it is very plain that there is in that case a greater guaranty of accuracy than when a third person is interposed as interpreter, for the officer then knows himself what the witness says, and is not required to take it at second hand from a person who gives his understanding of it. This we understand to be admitted, at least not to be denied, by the appellants; but the argument is, that when the officer acts in the dual

capacity of a commissioner to take the testimony and of an interpreter to translate the interrogatories to the witness, and to translate his answers into the English of the deposition, he should be sworn specially in this latter capacity. Neither upon reason nor upon authority do we regard the argument as well founded.

By his office and his appointment the officer who takes a deposition is charged with the duty of taking it truly and faithfully. He is not required, as we have already stated, to be specially sworn for that purpose. If a witness produced before him can only testify in a foreign language, and the officer fully understands that foreign language, it is not apparent why there should be any greater obligation upon him to report the answers of such witness faithfully than there would be to report those of a witness speaking in the English language. The sole purpose of an interpreter is to enable the officer taking the deposition to set down the words of the witness correctly in the English language according to their true tenor and import in the language of the witness; but if the officer fully understands the witness in his own language, and can himself speak that language and translate it into English, he is in greatly better position to report the witness correctly than if he were compelled to use the services of a third person as an interpreter for the purpose. It is the interpreter or intermediary that is required to be sworn, because he becomes a witness; but the officer does not become a witness, because he understands a foreign language, and can set down in English what a witness unacquainted with English testifies in such foreign language.

This is the dictate of reason and common sense, and it does not seem to require the authority of adjudicated cases to support it. But such authority is not wanting. See *Christman* v. *Ray,* 42 Ill. App. 111; *State* v. *Cardinas,* 47 Tex. 251; *McKinney* v. *O'Connor,* 26 Tex. 5; *Munk* v. *Weidner,* 29 S. W. R. 409; *Davis* v. *Migliavaca,* 41 S. W. R. 91; *City*

*Fire Ins. Co.* v. *Carrugi,* 41 Ga. 660; *Leetch* v. *Atlantic Mutual Insurance Co.,* 4 Daly, N. Y. 518. The uniform tenor of all these decisions is to the effect that when an interpreter is required he shall be sworn as a witness, but that no interpreter is required when the officer taking the deposition is himself conversant with the language of the witness. And when no interpreter is required, of course there can be no requirement of an oath to interpret faithfully. Unless error or unfairness is affirmatively shown, the official character of the officer taking the deposition, and his official certificate thereto conformably with the requirements of law, are sufficient guarantee that the duty imposed upon him by law has been faithfully performed.

It is very true, as argued by counsel for the appellants, that the cases cited have all arisen under State statutes and local rules or codes of practice, and that the manner of taking testimony in the present and other similar cases is to be governed by the laws of the United States. But this argument affords him no assistance, for the laws of the United States are entirely silent on the subject, and leave it to the operation of the general principles governing legal procedure. And those general principles, as we have remarked, do not necessarily require that an officer taking a deposition should be sworn to take down correctly the testimony that is adduced before him any more when that testimony is primarily given in a foreign language than when it is given in the English language, when he understands both languages sufficiently well to translate the answers and the interrogatories from one language into the other. We do not mean to say that there may not be cases where it would be proper that the officer should be specially sworn as an interpreter; but we do say that a deposition should not be rejected merely because it does not appear affirmatively that the officer has been sworn to report correctly the answers of a witness given in a foreign language with which the officer is himself familiar.

Nor is it any objection to the proceeding, that the witness is· required to sign his deposition, and that he can not be presumed to understand, and therefore can not be presumed to sign intelligently, a deposition taken in the English language when he is not conversant with our language. But we know nothing in our procedure of depositions taken in a foreign language. Our depositions are required to be in the English language, and in that language alone is the officer required to take them down and return them. The case of a witness who testifies primarily in a foreign language, and signs his deposition in the English language, is no different in principle from that of a witness who can not read or write and who signs by mark. In either case the deposition is read to him, and he signs it upon the faith that it is read to him correctly. It is true that writings in a foreign language, when they are required in legal proceedings, must be introduced in the original, to be accompanied with a translation, and that a translation without the original would not suffice. Bnt this is not an analogous case. A writing in a foreign language is a fact to be dealt with like any other fact.

We are satisfied that the tribunals of the Patent Office were entirely right in their ruling upon the deposition in question.

Second. The second question raised by the appellants on this appeal is, that the testimony on behalf of Rothe does not sufficiently identify the invention in issue so as to justify the award of priority to him. But we do not regard this position as well taken.

Meyer and Foulds, although they filed a preliminary statement in which they claim to have conceived the invention in issue in the year 1887, and to have made a model of it in the year 1890, and to have used it to some extent since the fall of 1894, took no testimony in support of their claim, and are therefore confined to the record date of the filing of their application, February 16, 1895, as that of their con-

ception and constructive reduction to practice. The appellee Rothe proves conception by him in May, 1894, and actual reduction to practice in the beginning of August, 1894. If the proof is sufficient, he is therefore clearly entitled to priority; and we have no doubt that the proof is amply sufficient, and no doubt that the application of the appellants was an unjustifiable attempt on their part to appropriate to themselves the invention of the appellee.

Rothe testifies distinctly and positively that he had the invention prior to his going to work for the appellants in July, 1894; that he was employed by them with the view of introducing his invention in their works near Philadelphia; that while in their factory he constructed a full-sized model in August, 1894, and that thereafter the machine was in full and successful operation in that factory; and this latter statement the appellants themselves substantiate in their preliminary statement, and the whole testimony is fully sustained and corroborated by three unimpeached witnesses. If there is anything indeterminate in this testimony, which is not apparent, or if it could have been shaken upon cross-examination, the appellants have only themselves to blame for the condition in which the testimony leaves the case. The inference is warranted that they had no just case, and that they abandoned the proceeding deliberately and with full knowledge of the weakness of their claim.

We concur with the tribunals of the Patent Office that the appellee has fully and sufficiently proved his case, and that he is entitled to judgment of priority of invention.

The decision of the Commissioner of Patents will therefore be *affirmed, and the clerk of this court will certify this decision and the proceedings in this court to the Commissioner, to be entered of record in his office, according to law. And it is so ordered.*